**ESPEY & ASSOCIATES, PC**
RICHARD W. ESPEY
(*PRO HAC VICE*, Texas SBN 06667580)
JONATHAN N. DARNELL
(*PRO HAC VICE*, Texas SBN 24001967)
12400 San Pedro Ave., Ste. 200
San Antonio, Texas 78216
Phone: 210-404-0333
Fax: 210-404-0336
espeyservice@lawespey.com

Attorneys for Defendants Alan B. Cerwick, Susan G. Gray and Bruce Hendel

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

M.O. DION & SONS, INC., a California corporation; and AMBER RESOURCES, LLC, a California limited liability company,

Plaintiff,

vs.

VP RACING FUELS, INC., a Texas corporation; ALAN B. CERWICK, an individual; SUSAN G. GRAY, an individual; BRUCE HENDEL, an individual; and DOES 1-100, inclusive,

Defendants.

No. 2:19-cv-05154-MWF-SSx

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS ALAN B. CERWICK, SUSAN G. GRAY AND BRUCE HENDEL'S MOTION TO DISMISS**

**[Fed. R. Civ. P. 12(b)(2)]**

Date: August 12, 2019
Time: 10:00 a.m.
Courtroom: 5A

# TABLE OF CONTENTS

A. INTRODUCTION .......... 1

B. STATEMENT OF RELEVANT FACTS .......... 1

1. Alan B. Cerwick. .......... 2

2. Susan G. Gray. .......... 3

3. Bruce Hendel. .......... 4

C. ARGUMENT .......... 5

1. Principles of Personal Jurisdiction. .......... 5

2. General Jurisdiction. .......... 7

3. This Court Lacks General Jurisdiction over the Individual Defendants. .......... 7

4. Specific Jurisdiction. .......... 8

5. The Fiduciary Shield Doctrine. .......... 9

6. This Court Lacks Specific Jurisdiction over the Individual Defendants. .......... 11

D. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

*Brown v. General Steel Domestic Sales, LLC,* No. CV 08-00779 MMM (SHx), 2008 U.S. Dist. LEXIS at *40-42 (C.D. Cal., May 19, 2008) .......... 14

*Calder v. Jones*, 465 US 783, 788 (1984) .......... 6

*Core-Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1487-88 (9th Cir. 1993) .......... 13

*Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) .......... 9

*Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) .......... 6

*Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996) .......... 6

*Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92 (9th Cir. 1988) .......... 10

*Gibbons v. H.J. Heinz Co.*, No. 92-594-FR, 1992 U.S. Dist. LEXIS 14732, at *3-4 (D. Or. 1992) .......... 9

*Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) .......... 7

*Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 (9th Cir. 1990) .......... 6

*Hamad v. Gates*, No. C 10-591 MJP, 2011 U.S. Dist. LEXIS 57405 at *13-14 (W.D. Wash., May 27, 2011) .......... 8

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) .......... 7

*Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1478 (9th Cir. 1986) .......... 7

*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 306 (1945) .......... 6

*Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) .......... 7

*Lozano v. American Express Travel Related Services, Inc.*, No. 02-39-HA, 2002 U.S. Dist. LEXIS 20373, at *9-10 (D. Or. 2002) .......... 9

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2nd Cir. 1981) .......... 9

*Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007) .......... 6

*Millennium Enter., Inc. v. Millennium Music, LP*, 33 F. Supp. 907, 909 (D. Or. 1999) 6

*Reiffin v. Microsoft Corp.*, No. C 11-03505 CRB, 2012 U.S. Dist. LEXIS 53220 at *12 (N.D. Cal. Apr. 16, 2012)........................................................................9

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)........6, 9

*SEC v. Jammin Java Corp.*, No. 215-cv-08921-SVW-MRW, 2016 U.S. Dist. LEXIS 184773 at *30 (C.D. Cal. July 18, 2016)..................................................................10

*Sher v. Johnson*, 911 F.2d 1367, 1361 (9th Cir. 1990)..................................................7

*State Narrow Fabrics v. Fisher*, No. 16-4252 MWF (RAOx), 2016 U.S. Dist. LEXIS at *6-9 (C.D. Cal. Nov. 29, 2016)........................................................................10

*Tabb v. One West Bank (Indymac)*, No. CV-10-855-ST, 2010 U.S. Dist. LEXIS 140809 at *15 (D. Or. Nov. 1, 2010)...........................................................6, 14

*Tangiers Investors, L.P. v. Americhip Int'l, Inc.*, No. 11CV339 JLS BGS, 2011 U.S. Dist. LEXIS 83820 at *4-6 (S.D. Cal. Aug. 1, 2011)..............................................10

*Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).........................6

**RULES**

Rule of Civil Procedure 12(b)(2)...........................................................................14

Defendants Alan B. Cerwick, Susan G. Gray and Bruce Hendel (hereinafter collectively referred to as the "Individual Defendants") hereby submit the following memorandum of points and authorities in support of their Motion to Dismiss.

## A. INTRODUCTION

On June 5, 2019, Plaintiffs M.O. Dion & Sons, Inc. and Amber Resources, LLC (hereinafter "Plaintiffs") filed their Original Complaint in the Superior Court of the State of California, County of Los Angeles, Central District, naming as defendants VP Racing Fuels, Inc. ("VP"), Alan B. Cerwick, Susan B. Gray and Bruce Hendel. Plaintiffs allege causes of action against all defendants for Negligence; Violation of California False Advertising Law, Bus. & Prof. Code §§17500 et seq; Fraud; and Negligent Misrepresentation. Plaintiffs allege additional causes of action solely against VP for Breach of Contract; Breach of Express and Implied Warranties; Declaratory Relief and Breach of Agreement to Negotiate. Central to virtually all of Plaintiffs' claims is their contention that the defendants wrongfully swapped an ingredient named MTBE with an allegedly inferior substitute named ETBE in the racing fuel it sold to Plaintiffs. VP removed Plaintiffs' lawsuit to this Court on June 13, 2019.

Pursuant to Rule 12(b)(2), this Court should dismiss all of Plaintiffs' claims against the Individual Defendants because this Court lacks personal jurisdiction over them. There are insufficient contacts between the Individual Defendants and the State of California sufficient to allow personal jurisdiction over the Individual Defendants. None of them reside in California, nor do they have continuous and systematic contacts with California. Further, all of their alleged activities which relate to the claims being asserted would have been performed as employees/on behalf of VP, and not in their individual capacities.

## B. STATEMENT OF RELEVANT FACTS

VP is a Texas corporation whose principal place of business is located in Bexar County, Texas. Declaration of Susan G. Gray ("Gray Decl.") ¶ 4. VP sells over 70

different blends of high-performance fuels throughout the United States used by racing vehicles of all types throughout the world. Declaration of Bruce Hendel ("Hendel Decl.") ¶ 5.

Many states either ban or impose limitations on the use of methyl-tert-butyl ether ("MTBE") in fuels. In mid-2016, VP received notice from the State of New York that the use of gasoline containing MTBE in a motor vehicle was prohibited from use whether the vehicle was operated on a public or private roadway in New York, including racing on non-public roadways. Gray Decl. ¶ 6.

In response to the notification from New York, numerous meetings were held at VP involving a large number of VP personnel, including representatives from the lab, from sales, from purchasing, and from management, to determine how to address the restrictions on MTBE. Gray Decl. ¶ 7. During those meetings, Ethyl-tert-butyl ether ("ETBE") was proposed as an alternate component. *Id.* Ultimately, a consensus was reached within VP to begin manufacturing fuels using ETBE instead of MTBE to address the MTBE restrictions. *Id.*

**1. Alan B. Cerwick.**

Defendant Alan B. Cerwick ("Cerwick") is the President of VP and has held that position since August 1, 2011. Declaration of Alan B. Cerwick ("Cerwick Decl.") ¶ 2. Cerwick has worked at VP's corporate headquarters in Bexar County, Texas since August 1, 2011. *Id.* ¶ 4. Cerwick has resided in Bexar County, Texas since 2002. *Id.* ¶ 3. His driver's license is issued by the State of Texas and his vehicle is registered in Texas. *Id.* He has no present intention of moving out of Texas. *Id.* Although he resided in California from 1992 to 1995, he was not employed by VP at that time, and does not maintain a residence in California. *Id*. Cerwick personally does not own any property, have any licenses or offices or operate any businesses in California. *Id.* ¶ 9.

Cerwick's job duties as President / CEO generally involve providing strategic, financial and operational leadership for the company and working with the senior

leadership team to make sure the company's goals are met. *Id.* ¶ 5. Cerwick is typically not directly involved in decision-making on details related to issues of product formulations, product marketing, labeling and sales. *Id.*

Cerwick did not attend any of the meetings at VP in which ETBE was proposed as an alternate component. *Id.* ¶ 6. He was informed from time to time about the discussions that were ongoing about the use of MTBE in certain states, but he did not make the decision by VP to utilize ETBE in any of VP's racing fuels and learned about the decision after it had been made. *Id.* Similarly, when VP began to manufacture and sell racing fuels containing ETBE, he did not provide specific direction or instruction regarding how to market or label VP's fuels containing ETBE. *Id.*

Cerwick did not attend the meetings in Los Angeles, California in January 2019 referenced in Plaintiffs' Compliant at which VP's products were discussed. *Id.* ¶ 8. All of Cerwick's interactions with Plaintiffs have been performed solely in his capacity as an employee of VP, and not in any individual capacity. *Id.* ¶ 7.

**2. Susan G. Gray.**

Defendant Susan G. Gray ("Gray") has been the General Counsel of VP for more than ten years. *Id.* ¶ 2. She was also its Chief Financial Officer through 2016. *Id.* In 2017 and 2018 she also held the position of Chief Operating Officer. *Id.* Gray's duties as General Counsel generally involve providing legal counsel and advice to VP. *Id.* ¶ 5. Her job duties as COO included general oversight of daily company operations and ensuring VP's various employees had the tools and resources needed to perform their respective jobs. *Id.* Her duties as CFO generally included ensuring VP met its various financial obligations, banking and accounting relationships, budgeting, and ensuring the controller was maintaining VP's financial books and records. *Id.*

Gray has resided in Wilson County, Texas for approximately three years, and prior to that, she lived in Bexar County, Texas. Gray Decl. ¶ 3. Her driver's license is

issued by the State of Texas and her vehicle is registered in Texas. *Id.* She has no present intention of moving to California, does not maintain a residence in California and has never resided in California. *Id.* Gray personally does not own any property, have any licenses or offices or operate any businesses in California. *Id.* ¶ 11.

In order to provide legal counsel to VP, Gray's employment requires from time to time that she have discussions with and provide legal advice to various VP management and others related to the design, formulation, labeling, marketing, manufacturing, and/or distribution of VP's various products. *Id.* ¶ 5. However, she is not the decision maker in those areas. *Id.*

Gray does not have any specialized training, education or technical experience regarding the design, formulation or manufacture of VP's racing fuels. *Id.* ¶ 8. She did not propose or evaluate the use of ETBE. *Id.* She did not make the decision to use ETBE in any of VP's fuels, nor was she a primary contributor in such decisions. *Id.* She did not direct or instruct anyone at VP on how to design, formulate or manufacture any of the fuels containing ETBE, or any fuels, for that matter. *Id.* Similarly, when VP began to manufacture and sell racing fuels containing ETBE, she did not provide specific direction or instruction regarding how to market or label VP's fuels containing ETBE. *Id.*

Gray attended the meetings in Los Angeles, California in January 2019 referenced in Plaintiffs' Compliant. *Id.* ¶ 10. Those meetings pertained to the products sold by VP to Plaintiffs. *Id.* Those meetings did not include any matters or interests involving her personally. *Id.* She attended those meetings solely on behalf of VP, and not in any individual capacity. *Id.*

**3. Bruce Hendel.**

Defendant Bruce Hendel ("Hendel") has been VP's Vice President North American Sales – Race Fuel and Consumer Products since October 2017. *Id.* ¶ 2. Prior to that, he held the position of Director of Sales – Consumer Products from 2013 to October 2017. *Id.* Hendel's job duties as Director of Sales – Consumer Products

pertained to small engine fuels (for outdoor power equipment), not racing fuels. *Id.* ¶ 6. Hendel's job duties as Vice President North American Sales – Race Fuel and Consumer Products generally involve sales and management of VP sales personnel. *Id.*

Hendel has resided in Kendall County, Texas since November 2014. Hendel Decl. ¶ 3. He does not maintain a residence in California. *Id.* His driver's license is issued by the State of Texas and his vehicle is registered in Texas. *Id.* He has no present intention to move his residence out of Texas. *Id.* He personally owns a rental property in Menifee, California. *Id.* ¶ 4. VP does not have any ownership interest in Hendel's rental property, nor does that rental property have any affiliation or relationship with Plaintiffs. *Id.* Other than the above-described rental property, Hendel does not personally own any other property, have any licenses or offices or operate any businesses in California. *Id.* ¶ 10.

Hendel did not attend any of the meetings at VP in which ETBE was proposed as an alternate component, as his job duties at the time involved small engine, not racing, fuels. *Id.* ¶ 7. Hendel had no involvement in the decision by VP to utilize ETBE in any of VP's racing fuels. *Id.* Similarly, when VP began to manufacture and sell racing fuels containing ETBE, Hendel did not provide specific direction or instruction regarding how to market or label VP's fuels containing ETBE. *Id.*

Hendel's interactions with Plaintiffs have always been performed solely in his capacity as an employee of VP. *Id.* ¶ 8. Hendel attended the meetings in Los Angeles, California in January 2019 referenced in Plaintiffs' Complaint. *Id.* ¶ 9. Those meetings did not pertain to any personal matters or business interests of Hendel. *Id.* He attended those meetings solely on behalf of VP, and not in any individual capacity. *Id.*

## C. ARGUMENT

### 1. Principles of Personal Jurisdiction.

Federal Rule of Civil Procedure 12(b)(2) provides that a complaint should be

dismissed if the court does not have personal jurisdiction over the moving defendant. This is because "[w]henever a judgment is sought against a defendant personally, such as for money damages or an injunction, the court must have personal jurisdiction over the defendant." *Tabb v. One West Bank (Indymac)*, No. CV-10-855-ST, 2010 U.S. Dist. LEXIS 140809 at *15 (D. Or. Nov. 1, 2010). The plaintiff has the burden of establishing personal jurisdiction over each defendant. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007).

Generally, determining whether a federal court has personal jurisdiction over a nonresident defendant involves two inquiries: [1] whether the forum state's long-arm statute permits the assertion of jurisdiction, and [2] whether assertion of personal jurisdiction violates federal due process. *Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm statute permits the assertion of jurisdiction coextensive with federal due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990). "Thus, the analysis collapses into a single framework and the court proceeds under federal due process standards." *Millennium Enter., Inc. v. Millennium Music, LP*, 33 F. Supp. 907, 909 (D. Or. 1999).

Due process requires a nonresident defendant to have certain minimum contacts with the forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 306 (1945)). In judging minimum contacts, this Court should focus on the relationship among the defendants, the forum, and the litigation. *Calder v. Jones*, 465 US 783, 788 (1984). Such "minimum contacts" are present if a court has either "general" or "specific" jurisdiction over the defendant. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

**2. General Jurisdiction.**

"General jurisdiction applies where a defendant's activities in the state are substantial or continuous and systematic, even if the cause of action is unrelated to those activities." *Sher v. Johnson*, 911 F.2d 1367, 1361 (9th Cir. 1990) (internal citations and quotations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011). This standard is "fairly high" and requires the contacts to be of the sort that approximate physical presence within the state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) (internal citations omitted). Pertinent factors to consider are whether the defendant: [1] makes sales, solicits, or engages in business in the state, [2] serves the state's markets, [3] designates an agent for service of process, [4] holds a license, or [5] is incorporated in the state. *Id.* (citing *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)). Factors that courts consider in evaluating the domicile of a person include "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

**3. This Court Lacks General Jurisdiction over the Individual Defendants.**

Plaintiff has failed to plead facts demonstrating that any of the Individual Defendants had the sort of "substantial or continuous and systematic" contacts with California that would give rise to general jurisdiction over them. *See Sher*, 911 F.2d at 1361. The Individual Defendants are all domiciled in Texas. Indeed, with respect to Cerwick and Gray, Plaintiffs' Complaint acknowledges they are residents of Texas. See Complaint (Doc. 1) ¶¶ 5-6. Plaintiffs' allegations that the Individual Defendants "engage in significant business and other activities in the State of California" is conclusory, vague and insufficient to establish general (or specific) jurisdiction. See

Complaint (Doc.1) ¶ 13. All of the Individual Defendants have lived and worked in Texas for many years, hold Texas driver's licenses and their vehicles are registered in Texas. Cerwick Decl. ¶ 3-4, Gray Decl. ¶ 3-4, Hendel Decl. ¶ 3,5. None of the Individual Defendants reside in California, have any licenses in California, operate any businesses or have any employees in an individual/personal capacity in California. Cerwick Decl. ¶ 9, Gray Decl. ¶ 11, Hendel Decl. ¶ 10. Furthermore, Cerwick, Gray and Hendel were all served with process in Texas, not California. Gray Decl. ¶ 12.

Although Plaintiffs allege Hendel resides in both Texas and California, Hendel only resides in Texas. Hendel Decl. ¶ 3. Hendel has resided in Texas since November 2014 and he has no present intention to move out of Texas. *Id.* He has worked in Texas since 2013, his driver's license is issued by the State of Texas and his automobile is registered in Texas. *Id.* Hendel does personally own rental property in California, but it is unrelated to the facts and circumstances of this litigation. *Id.* ¶ 4. The rental property, in and of itself, cannot form the basis for personal jurisdiction against Hendel for this lawsuit. *See Hamad v. Gates*, No. C 10-591 MJP, 2011 U.S. Dist. LEXIS 57405 at *13-14 (W.D. Wash., May 27, 2011) (dismissing individual defendant for lack of personal jurisdiction despite fact he had rental property in forum state).

The foregoing demonstrates Plaintiffs have not and cannot establish the Individual Defendants engaged in substantial or continuous and systematic contacts with California. Accordingly, this Court lacks general jurisdiction over the Individual Defendants.

**4. Specific Jurisdiction.**

Specific jurisdiction is established based on a three prong test: "(1) the nonresident defendant . . . purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum . . .; (2) the claim . . . be one which arises out of or relates to the defendant's forum-related

activities; and (3) the exercise of jurisdiction must be reasonable." *Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test, and if he succeeds at that, the burden shifts to the defendant to show compellingly that the exercise of jurisdiction would not be reasonable." *Reiffin v. Microsoft Corp.*, No. C 11-03505 CRB, 2012 U.S. Dist. LEXIS 53220 at *12 (N.D. Cal. Apr. 16, 2012).

**5. The Fiduciary Shield Doctrine.**

The fiduciary shield doctrine provides an exception to the exercise of personal jurisdiction over an individual where the individual's contacts with the forum state are based on activities conducted on behalf of his or her corporate employer. "Under the fiduciary shield doctrine, a persons' mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *see also Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2nd Cir. 1981). "The underpinning of this fiduciary shield doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit, but for the benefit of his employer." *Marine Midland*, 664 F.2d at 902; *see also Gibbons v. H.J. Heinz Co.*, No. 92-594-FR, 1992 U.S. Dist. LEXIS 14732, at *3-4 (D. Or. 1992) (rejecting plaintiff's contention individual employee had sufficient minimum contacts based on conduct performed on behalf of employer). The doctrine applies to shield an individual from personal jurisdiction where the employee faithfully pursues the interests of his employer rather than himself. *Id.; see also Lozano v. American Express Travel Related Services, Inc.*, No. 02-39-HA, 2002 U.S. Dist. LEXIS 20373, at *9-10 (D. Or. 2002).

The fiduciary shield doctrine has two exceptions, neither of which apply herein. First, in cases where a corporation is acting as an "alter ego" for an individual, the fiduciary shield doctrine may be ignored. *Davis*, 885 F.2d at 520-521, *Marine*

*Midland*, 664 F.2d at 903. The Ninth Circuit has held that in order to impose alter ego liability, the individual must have participated in the conduct proving the disregard of the corporate entity. *See Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92 (9th Cir. 1988) (holding individual defendant did not participate in management decisions or in alleged wrongful conduct supporting disregard of corporate entity). Two elements must be alleged to invoke alter ego: [1] a "unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist;" and [2] an inequitable result will occur "if the acts in question are treated as those of the corporation alone." *SEC v. Jammin Java Corp.*, No. 215-cv-08921-SVW-MRW, 2016 U.S. Dist. LEXIS 184773 at *30 (C.D. Cal. July 18, 2016).

The other exception to the application of the fiduciary shield doctrine occurs when the individual actively participates as "a primary participant or guiding spirit in the alleged wrongdoing intentionally directed at California." *See Tangiers Investors, L.P. v. Americhip Int'l, Inc.*, No. 11CV339 JLS BGS, 2011 U.S. Dist. LEXIS 83820 at *4-6 (S.D. Cal. Aug. 1, 2011) (citation and internal quotation marks omitted). But the Individual Defendants cannot be deemed to be the "guiding spirit" of their companies' purportedly wrongful activities simply by virtue of their positions with those companies. *Id.* (dismissing complaint against CEO for lack of personal jurisdiction even though CEO allegedly knew about subject wrongful activity undertaken by company for which he worked); *see also State Narrow Fabrics v. Fisher*, No. 16-4252 MWF (RAOx), 2016 U.S. Dist. LEXIS at *6-9 (C.D. Cal. Nov. 29, 2016) (citing cases). Indeed, in order to establish personal jurisdiction, a plaintiff must plead facts sufficient to establish that the employee was the "driving force or primary participant" in the alleged wrongdoing directed toward California. *Tangiers Investors*, 2011 U.S. Dist. LEXIS 83820 at *4-6.

**6. This Court Lacks Specific Jurisdiction over the Individual Defendants.**

Applied here, the allegations and evidence do not establish minimum contacts sufficient to justify specific jurisdiction of the Individual Defendants. Plaintiffs allege the Individual Defendants "were in charge of and had control over all of VP's business decisions of any significance," and "had sole control over the manner and method" of how VP's fuels "were formulated, designed, manufactured, stored, transported and sold" to Plaintiffs. Complaint (Doc. 1) ¶ 23. These allegations are conclusory, vague and overbroad, and fail to provide specific, factual allegations establishing the Individual Defendants conducted wrongful conduct specifically directed at California. They are also flatly contradicted by the Declarations of the Individual Defendants as discussed above in Part B of this Motion, *supra*.

As for the alter ego exception, there are no allegations, much less any evidence, that any of the Individual Defendants acted in disregard of the corporate entity with respect to the facts and circumstances at issue in this case. Although Plaintiffs allege Cerwick has owned a majority interest in VP since 2014 (*see, e.g.*, Complaint (Doc. 1) at ¶¶ 5, 22 and 24), Plaintiffs have not alleged there is such a "unity of interest" between Cerwick and VP that separate personalities do not exist. *Jammin Java Corp.*, 2016 U.S. Dist. LEXIS 184773 at 30). Nor have Plaintiffs alleged an inequitable result will occur if the alleged acts are treated solely as those of VP. *Id.* The alter ego exception is therefore inapplicable to the Court's jurisdictional analysis.

As for the second exception, it is flatly contradicted by the evidence. Even assuming VP's decision to start using ETBE instead of MTBE in certain of its racing fuels was "wrongful" (which is disputed), the evidence conclusively establishes the Individual Defendants were not primary participants, or "guiding spirits," in VP's decision to utilize ETBE, nor did they direct or control the formulation, manufacture, marketing or labeling of fuels utilizing ETBE. Gray attended meetings among a large group of VP personnel in which the use of ETBE was discussed, but she was not a primary contributor in the decision to utilize ETBE. Gray Decl. ¶ 8. Hendel and

Cerwick did not even attend those meetings, and only learned about the decision later after it was made. Hendel Decl. ¶ 7; Cerwick Decl. ¶ 6. This is insufficient as a matter of law to establish any of the Individual Defendants were a "guiding spirit" or "primary participant" in the alleged wrongful conduct directed at California.

The evidence also establishes that Gray and Hendel attended the January 2019 meetings with Plaintiffs in California to discuss the fuels sold by VP solely in their capacity as representatives/employees of VP. Gray Decl. ¶ 10, Hendel Decl. ¶ 9. Those meetings did not involve any personal/individual interests of Gray or Hendel. *Id.* Indeed, Plaintiffs' Complaint concedes they attended those meetings as "[r]epresentatives of VP." Complaint (Doc. 1) at ¶ 43.

In short, the Individual Defendants did not purposefully direct any activities in an individual or personal capacity with California sufficient to warrant specific jurisdiction. It is undisputed that the Individual Defendants' alleged activities upon which Plaintiffs' claims are based were performed solely by reason of their employment with VP, and the fiduciary shield doctrine therefore precludes personal jurisdiction. For the same reasons, it would betray traditional notions of fair play and substantial justice for this Court to exercise specific jurisdiction over the Individual Defendants. Therefore, Plaintiffs have failed to establish the first two prongs of the specific jurisdiction test as recited in *Schwarzenegger*.

Because Plaintiffs have failed to establish the first two prongs of the specific jurisdiction test, this Court need go no further. However, the Individual Defendants can also address the third prong – that the exercise of jurisdiction would not be reasonable. The seven factors that the Ninth Circuit examines to determine whether the exercise of jurisdiction would be reasonable are as follows:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the

> dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiffs interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). None of these factors is dispositive in itself; the Court must balance all seven. *Id.*

Applied here, none support a finding of specific jurisdiction over the Individual Defendants. First, as already discussed above, none of the Individual Defendants have done anything in an individual capacity to "interject" themselves into the affairs of the State of California. Thus, the first factor weighs against the exercise of jurisdiction. Second, as shown above, all of the Individual Defendants reside in Texas. The time and expense involved in traveling to California for a lengthy trial would be substantial. Plaintiffs, on the other hand, will not be prejudiced by the dismissal of the Individual Defendants, as the corporate defendant VP will remain a party to the case. Thus, the second factor weighs against the exercise of jurisdiction. Neither California nor Texas has a substantial interest in the dispute between Plaintiffs and the Individual Defendants. Thus, the third and fourth factors are at best neutral. Texas is the most efficient forum for this case to be litigated, particularly given that all four of the defendants are located in Texas. The fifth factor thus weighs against the exercise of jurisdiction in California.

Although Plaintiffs will undoubtedly argue that the sixth factor – the importance of the forum to the plaintiffs' interest in the controversy – weighs in their favor, it is canceled out by the second factor, *supra*, which weighs in favor of all defendants. Moreover, there is an alternate forum where this case could be litigated – the Western District of Texas, which is where all of the defendants reside. Thus, the seventh factor also weighs against the exercise of jurisdiction herein.

Balancing the seven factors prescribed in *Core-Vent*, this Court should decline to exercise jurisdiction over the Individual Defendants. Their peripheral acts in

California are unrelated to the claims in this lawsuit. It would be unreasonable - i.e. unfair - for the Court to exercise specific jurisdiction over them.

**D. CONCLUSION**

Based on the foregoing, Plaintiffs' claims against the Individual Defendants should be dismissed for lack of personal jurisdiction. *See Tabb*, 2010 U.S. Dist. LEXIS 140809 at *15 (recommending dismissal, with prejudice, for lack of personal jurisdiction where complaint against CEO did not allege that CEO resided in forum state or that he had personal contact, communications, or dealings with plaintiffs); *Brown v. General Steel Domestic Sales, LLC*, No. CV 08-00779 MMM (SHx), 2008 U.S. Dist. LEXIS 97832 at *40-42 (C.D. Cal., May 19, 2008) (granting motion for lack of personal jurisdiction where plaintiffs offered no support for bare assertion that company's president directed company's allegedly improper advertising campaign). For the reasons set forth herein, Defendants Alan B. Cerwick, Susan G. Gray and Bruce Hendel respectfully request the Court to dismiss this lawsuit against them for lack of personal jurisdiction pursuant to Rule of Civil Procedure 12(b)(2).

DATED: July 12, 2019

Respectfully submitted,

**ESPEY & ASSOCIATES, PC**

By: ______________________________

Richard W. Espey
Jonathan N. Darnell

Attorneys for Alan B. Cerwick, Susan G. Gray and Bruce Hendel