CIVIL MINUTES—GENERAL

**Case No.  CV 19-5154-MWF (SSx)**                    **Date:  September 27, 2019**

Title:      M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                      Court Reporter:
Rita Sanchez                       Not Reported

Attorneys Present for Plaintiff:   Attorneys Present for Defendant:
None Present                       None Present

**Proceedings (In Chambers):**   ORDER RE: MOTION TO REMAND [28], MOTION
                                 TO DISMISS PURSUANT TO RULE 12(b)(2) [21],
                                 MOTION TO DIMISS PURSUANT TO RULE
                                 12(b)(6) AND 9(b) [15]

Before the Court are three motions:

First, there is the Motion to Remand filed by Plaintiffs M.O. Dion & Sons, Inc. and Amber Resources, Inc. (collectively "Plaintiffs" or "Dion") on July 15, 2019. (Docket No. 28).  On July 22, 2019, Defendant VP Racing Fuels, Inc. ("VP") filed an Opposition.  (Docket No. 29).  Plaintiffs filed a Reply on July 29, 2019.  (Docket No. 46).

Second, there is the Motion to Dismiss pursuant to Rule 12(b)(2) filed by Defendants Alan B. Cerwick, Susan B. Gray, and Bruce Hendel (collectively the "Individual Defendants") on July 12, 2019.  (Docket Nos. 21, 22).  On July 22, 2019, Plaintiffs filed an Opposition.  (Docket No. 32).  The Individual Defendants filed a reply on July 29, 2019.  (Docket No. 38).

Third, there is the Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 9(b) filed by Defendant VP on June 28, 2019.  (Docket Nos. 15, 16).  On July 12, 2019, the Individual Defendants filed a joinder to VP's Motion to Dismiss.  (Docket No. 26).  On July 22, 2019, Plaintiffs filed an Opposition.  (Docket No. 31).  Defendant VP filed a Reply on July 29, 2019.  (Docket No. 41).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 19-5154-MWF (SSx)** **Date: September 27, 2019**

**Title:** M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

The Court has read and considered the papers filed in connection with the three motions and held a hearing on August 12, 2019.

For the reasons discussed below, the motions are ruled upon as follows:

- Plaintiffs' Motion to Remand is **DENIED**. Defendants plausibly establish by a preponderance of the evidence that complete diversity exists and that the amount in controversy exceeds $75,000. Plaintiffs' request for attorneys' fees pursuant to 28 U.S.C. § 1447(c) is also **DENIED**.

- Defendants Cerwick, Gray, and Hendel's Motion to Dismiss for Lack of Jurisdiction under Rule 12(b)(2) is **GRANTED** *in part* and **DENIED** *in part without leave to amend*. The Court grants the motion to dismiss Cerwick based on the fiduciary shield doctrine. However, the Court denies the motion to dismiss Gray and Hendel based on the guiding spirit exception to the fiduciary shield doctrine.

- Defendant VP's Motion to Dismiss pursuant to Rule 12(b)(6) and Rule 9(b) is **GRANTED** *in part* and **DENIED** *in part with leave to amend*. The Court denies the motion to dismiss Plaintiffs' UCL and FAL claims based on preemption because Plaintiff has alleged at least one theory of liability that is not preempted under the PMPA. However, the Court grants the motion to dismiss Plaintiffs' UCL claim because Plaintiff has failed to establish standing. The Court also denies the motion to dismiss fraud-based claims under Rule 9(b) because Plaintiffs have alleged at least one allegation of fraud with sufficient specificity.

## I.   **BACKGROUND**

On June 5, 2019, Plaintiffs commenced this action in the Los Angeles County Superior Court. (*See* Notice of Removal ("NoR"), Ex. 1 ("Complaint") (Docket No. 1-1)).

**Case No.** CV 19-5154-MWF (SSx)          **Date:** September 27, 2019

**Title:**      M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

There are two plaintiffs and four defendants in this action. Plaintiff M.O. Dion & Sons is a California corporation whose principal place of business is in California. (*Id.* ¶ 2; NoR ¶ 9). Plaintiff Amber Resources, LLC is a California limited liability company whose principal place of business is in California. (*Id.* ¶ 3; NoR ¶ 9). The four defendants are VP Racing Fuels, Inc., Alan B. Cerwick, Susan G. Gray, and Bruce Hendel. (*See generally* Compl.) VP is a Texas corporation whose principal place of business is in Texas. (Compl. ¶ 4; NoR ¶ 9). Cerwick, Gray, and Hendel are residents of San Antonio, Texas. (Compl. ¶¶ 5-7; NoR 10).

The Complaint contains the following allegations:

Dion is a "full service distributor of petroleum, including racing fuels, in Southern California." (Compl. ¶ 15). Defendant VP is a manufacturer of racing fuels. (*Id.* ¶ 1). On May 21, 2012, Dion and VP entered into a Distributor Agreement ("2012 Agreement"), in which Dion agreed to purchase racing fuels exclusively from VP. (*Id.* ¶¶ 18-20). Dion then sold VP's racing fuel under its own brand ("F&L branded VP racing fuel") as well as under VP's brand ("VP branded racing fuel"). (*Id.* ¶ 20). Since about May 2012, Dion purchased racing fuels worth millions of dollars from VP. (*Id.* ¶ 21).

According to Dion, VP underwent a change in ownership around 2014, when Cerwick acquired a majority ownership interest in VP. (*Id.* ¶ 22). Dion alleges that Cerwick became the President of VP, Gray became the Chief Financial Officer and General Counsel, and Hendel subsequently became the Vice President in charge of North American sales. (*Id.* ¶ 22). Dion alleges that all three individuals "were in charge of and had control over all VP's business decisions of any significance," including "the manner and method of how the racing fuels . . . were formulated, designed, manufactured, labeled, advertised, marketed, stored, transported, and sold to Dion and others." (*Id.* ¶ 23).

Plaintiffs allege that VP's original racing fuel were originally manufactured using methyl tert-butyl ether ("MTBE"), which provides high oxygenation essential for racing fuel. (Compl. ¶ 25). Plaintiffs further allege that the use of MTBE was required under the 2012 Agreement along with VP's published product specifications. (*Id.* ¶

**Case No.**  CV 19-5154-MWF (SSx)                    **Date:  September 27, 2019**

**Title:**        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

25).  In or about 2016, however, VP allegedly started using ethyl tert-butyl ether ("ETBE") instead of MTBE "at the direction of Cerwick, Gray, and/or Hendel." (Compl. ¶ 27).  According to Dion, ETBE is considerably less expensive than MTBE and provides less oxygenation, reducing the performance of racing fuels containing it. (*Id.* ¶ 26).  Dion alleges that VP made this switch without disclosing it to Dion, without conducting appropriate testing, and without making appropriate changes to its published product specifications and documentations.  (*Id.* ¶ 27).

Dion further alleges that Defendants "actively concealed and refused to disclose the use of ETBE and lack of testing to Dion" and "took steps to prevent others at VP from disclosing to Dion and others . . . including by bribing some employees and threatening others with litigation." (*Id.* ¶ 30).  Dion also alleges that Defendants actively refused to test the octane ratings of its fuels even though VP failed several state agency testings and received complaints from customers about VP racing fuel's poor performance. (*Id.* ¶¶ 30-34).  Furthermore, around 2017, Defendants allegedly designed a VP-only-internal labeling system, which allowed VP employees to identify those that were manufactured using MTBE instead of ETBE.  (*Id.* ¶ 35).  Dion alleges that Defendants directed VP employees to sell and supply MTBE racing fuels to customers or places where fuel octane rating testing was planned or more likely to be conducted but sell the racing fuels with ETBE in other places.  (*Id.* ¶ 37).

Around July 2018, Dion received customer complaints about its F&L branded VP racing fuel.  (*Id.* ¶ 42).  Dion retained two companies to test this fuel and found out that the octane rating of the was 107.1, not the required 110.  (*Id.*).  Dion notified VP of the testing results and met with VP employees Gray, Hendel, and Minazzi, on January 17, and 18, 2019.  (*Id.* ¶ 43).  In the meeting, the VP employees "represented and warranted to Dion's representatives . . . that, among other things, VP would 'clean up' its act by eliminating all fraudulent, unlawful, and unfair practices, and that all of VP's future deliveries to Dion of VP racing fuels, including F&L branded VP racing fuel, would fully comply with their respective specifications, including but not limited to octane ratings." (*Id.* ¶ 45).

Case No. **CV 19-5154-MWF (SSx)**                    Date: **September 27, 2019**

Title:        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

As a result of this meeting, VP and Dion agreed to enter into a new distribution agreement, which provided for appropriate testing of the racing fuels. (*Id.* ¶ 44). In or about April 2019, however, VP allegedly refused to continue negotiating or sign the New Agreement. (*Id.* ¶ 47). Dion conducted additional testing on its VP racing fuel in or about May 2019 and found that F&L branded VP racing fuel had an octane rating of only 107.5. (*Id.* ¶ 48). On June 4, 2019, Dion cancelled the 2012 Agreement and ended its relationship with VP. (*Id.* ¶ 50).

Based on the above allegations, Plaintiffs assert nine claims against Defendants: (1) breach of contract; (2) breach of warranties; (3) negligence; (4) violation of California False Advertising Law ("FAL"), Cal. Bus. & Profs. Code §§ 17500, *et seq.*; (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code §§ 17200, *et seq.*; (6) fraud, (7) negligent misrepresentation, (8) declaratory relief, and (9) breach of agreement to negotiate. (*Id.* ¶¶ 51-109).

On June 13, 2019, Defendant VP timely removed the action, invoking the Court's diversity jurisdiction and federal question jurisdiction. (NoR ¶¶ 5-12).

## II.    **MOTION TO REMAND**

Plaintiffs seeks to remand the action, arguing that neither diversity jurisdiction nor federal question jurisdiction exists. (Remand Mot. at 1). Because the Court determines that it has diversity jurisdiction, it need not address whether federal question jurisdiction also exists.

### A.    **Legal Standard**

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]" 28 U.S.C. § 1441(a). A removing defendant bears the burden of establishing that removal is proper. *See Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"). If there is any doubt regarding the existence of subject matter jurisdiction, the court must

| | |
|---|---|
| Case No. **CV 19-5154-MWF (SSx)** | Date: **September 27, 2019** |
| Title: | M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al. |

resolve those doubts in favor of remanding the action to state court. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

In most circumstances, "federal district courts have jurisdiction over suits for more than $75,000 where the citizenship of each plaintiff is different from that of each defendant." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (citing 28 U.S.C. § 1332(a)).

The Ninth Circuit employs the following framework for determining the amount in controversy on removal. First, a "court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If not, the court may consider facts in the removal petition and require parties to submit "summary-judgment-type evidence" relevant to the amount in controversy. *Id.*; *see also Corbelle v. Sanyo Elec. Trading Co.*, No. CV03-01509, 2003 WL 22682464, at *3 (N.D. Cal. Nov. 4, 2003). "[T]he defendant seeking removal bears the burden of proof to establish by a preponderance of the evidence that the amount-in-controversy requirement is satisfied." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted).

## B. Discussion

The parties appear to agree that there is complete diversity of citizenship. (Remand Opp. at 2-5; Remand Reply at 5-6). Thus, the only issue in dispute is whether the amount in controversy exceeds the $75,000 jurisdictional minimum.

Plaintiffs' complaint does not allege a specific amount of money that it seeks to recover. (*See generally* Compl.). However, many of its claims seek financial compensation, including compensatory damages, restitutionary damages and disgorgement of ill-gotten revenues and profits, punitive damages, and attorneys' fees and costs. (*See* Compl. ¶¶ 51-109). Specifically, with regard to the restitutionary damages, Plaintiffs seek "all monies [that Defendants] wrongfully obtained from Dion." (Compl. ¶¶ 76, 85).

Case No. **CV 19-5154-MWF (SSx)**                    Date: **September 27, 2019**

Title:        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

Defendant VP argues that the restitutionary damages alone exceeds the jurisdictional limit of $75,000. First, it notes that Plaintiffs alleged that "it has purchased from VP 'millions of dollars' worth of racing fuel products." (Remand Opp. at 6). Second, a declaration filed with VP's Opposition asserts that Plaintiffs purchased over $2 million in racing fuel in 2018 and over $1 million in 2019. (Declaration of Susan G. Gray (Docket No. 30), ¶ 4). In addition, the declaration attached two invoices from May 2019, which exceed $75,000 by themselves. (*Id.,* ¶ 5, Ex. A). Because Plaintiffs seek "all monies wrongfully obtained," VP argues that the amount in dispute far exceeds $75,000. (Remand Opp. at 6).

In response, Plaintiffs makes two arguments. First, they assert that the total amount of money Dion paid to VP for its fuel "does not equate to Dion putting this entire amount in controversy," because it is only seeking all monies "wrongfully obtained," which could be less than the full contract amount. (Remand Reply at 9). Second, because VP asserts in its Motion to Dismiss that Plaintiffs "cannot obtain any restitution from VP," Plaintiffs claim that VP cannot assert in this motion that Dion's restitutionary damages exceed $75,000. (*Id.*). At the hearing, Plaintiffs reiterated the same arguments. Neither argument is persuasive.

As to Plaintiffs' first argument, the Ninth Circuit rejected a similar argument in *Lewis v. Verizon Commc'ns., Inc.*, 627 F.3d 395 (9th Cir. 2010). There, plaintiff alleged that she and other putative class members were billed by Verizon for premium services they never ordered. Verizon presented a declaration stating that the total billing for members of the alleged class was in excess of $5 million. The Ninth Circuit rejected plaintiff's argument that Verizon's evidence was insufficient because it did not distinguish between authorized and unauthorized charges. The court explained, "Defendant has put in evidence of the total billings and the Plaintiff has not attempted to demonstrate, or even argue, that the claimed damages are less than the total billed." *Id.* at 400.

As in *Lewis*, Plaintiffs fail to offer ***any*** facts to demonstrate that the claimed damages are less than the threshold amount required. Rather, Plaintiffs merely argue that Defendant's evidentiary support is lacking. *See Roa v. TS Staffing Servs., Inc.*, No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5154-MWF (SSx)                    Date:  September 27, 2019

Title:        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

2:14-CV-08424-ODW, 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015) (finding removal proper where plaintiff did not "contest the allegations themselves, but instead contest[ed] [defendant's] evidence in support of the allegations").

Plaintiffs' second argument also fails because the "amount in controversy" merely refers to the amount that is put at issue in the litigation, not what plaintiffs will recover.  *See Lewis*, 627 F.3d at 400 ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.") (internal citations omitted).  "To establish the jurisdictional amount, [Defendant] does not need to concede liability for the entire amount."  *Id.*  Thus, Defendant may argue both that the amount in dispute exceeds $75,000 even if it later argues that Plaintiffs are not entitled to that amount.

The Court thus determines that Defendant VP has met its burden of establishing the amount in controversy and that the Court has diversity jurisdiction over this action. Accordingly, Plaintiffs' Motion to Remand is **DENIED.**  While having some sympathy for the argument that VP should have been more forthcoming at the meet-and-confer, the request for attorneys' fees is likewise **DENIED**.

## III.    12(b)(2) MOTION TO DISMISS (PERSONAL JURISDICTON)

Individual Defendants Cerwick, Gray, and Hendel assert that the Court should dismiss all claims against them because this Court lacks personal jurisdiction over them.  (12(b)(2) Mot. at 1).  Specifically, they argue that the fiduciary shield doctrine should apply because all of their contacts with California were based on activities conducted on behalf of their employer VP.  (*Id.* at 9).

### A.     Legal Standard

Rule 12(b)(2) governs dismissal for lack of personal jurisdiction.  The plaintiff bears the burden to establish the Court's personal jurisdiction over a defendant. *Cubbage v. Merchant*, 744 F.2d 665, 667 (9th Cir. 1984), *cert. denied,* 470 U.S. 1005 (1985).  The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues.  *Schwarzenegger v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5154-MWF (SSx)                    Date:  September 27, 2019
Title:        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

*Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Because Defendant's Motion is based on written materials rather than an evidentiary hearing, "[P]laintiff need only make a prima facie showing of jurisdictional facts."  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

In addition, the "fiduciary shield" doctrine states that an independent basis must exist for exercising personal jurisdiction over corporate officers apart from the contact their corporate employer had with the forum state.  "[A] corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum." *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379 (9th Cir. 1981) (holding there was no personal jurisdiction over a corporate-employee defendant when his only contacts with the forum state were attendance at a trade show and mailing letters to the defendant alleging infringing activities) (citing *Chem Lab Products, Inc. v. Stepanek*, 554 F.2d 371 (9th Cir. 1977)). If the corporate employee's only contacts with the forum state were functions of his employment, no personal jurisdiction exists.  *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (holding jurisdiction was proper because tortious activity was aimed at California where libelous story was drawn from California sources, injured a California resident, and California was the focal point of the article); *see also Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("[A] person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.").

## B.      Discussion

Cerwick, Gray, and Hendel do not dispute that they have sufficient contacts with California to warrant specific jurisdiction.  Instead, they argue that fiduciary shield doctrine should apply to protect them from being hailed to court in California because all the contacts they had with the forum state were through their duties as employees of VP, not as individuals.  (12(b)(2) Mot. at 9-14).  Because Plaintiffs do not make allegations that would justify an independent basis for exercising jurisdiction in

**Case No.** CV 19-5154-MWF (SSx)                    **Date:** September 27, 2019

**Title:**        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

California over the three Individual Defendants, the fiduciary shield doctrine is applicable here.  (*See* Rule 12(b)(2) Opp. at 14).

But there are two exceptions to the fiduciary shield doctrine: the "guiding spirit" and "alter ego" exceptions.  Below, the Court examines both exceptions.

### 1.  Guiding Spirit Exception

When a defendant corporate-employee was the "guiding spirit" behind the wrongful conduct or the "central figure" in the challenged corporate activity, courts have exercise personal jurisdiction even in instances when the fiduciary shield would normally limit jurisdiction.  *See Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (collecting cases); *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.,* No. C 08–04078 CW, 2009 WL 1033818, at *3–4 (N.D. Cal. Apr. 16, 2009).  This exception applies when the officer "is a primary participant in the alleged wrongdoing" or "had control of, and direct participation in the alleged activities."  *Winery v. Graham*, No. C 06–3618 MHP, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007).  But conclusory allegations will not suffice for such a showing.  Rather, the pleading must contain plausible, factual allegations.  *See Toyz, Inc. v. Wireless Toyz, Inc.*, No. C 09–05091 JF (HRL), 2010 WL 334475, at *8 (N.D. Cal. Jan. 25, 2010) (holding that conclusory allegations of "control" were insufficient to establish guiding spirit exception).

Plaintiffs argue that "the Court has specific jurisdiction over each of the Individual Defendants" without separating out their argument for each Defendant.  (*See* Rule 12(b)(2) Opp. at 13-16).  However, because there are distinct jurisdictional facts with respect to each Defendant, the Court will consider jurisdiction over each Defendant separately.

### a.  *Cerwick*

Alan B. Cerwick is the President of VP.  (Declaration of Alan B. Cerwick (Docket No. 23), ¶ 2; Compl. ¶ 22).  His "job duties generally involve providing strategic financial and operational leadership for the company and working with the

Case No. CV 19-5154-MWF (SSx)                    Date: September 27, 2019

Title:        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

senior leadership team to make sure the company's goals are met." (Cerwick Decl. ¶ 5).

First, Plaintiffs allege that "[o]n information and belief," "Cerwick, Gray, and Hendel were in charge of and had control over" how VP racing fuels were formulated, marketed, and labeled, implying that he was a central figure in deciding to use ETBE instead of MBTE in VP's racing fuels. (Compl. ¶ 23). Plaintiffs primarily argues that Cerwick must have known and been involved in these decisions because he is the President and majority-owner of VP. (Rule 12(b)(2) Opp. at 15). But "simply being the CEO is not enough to establish that [a defendant] [is] the 'guiding spirit' behind the injurious activities." *Tangiers Investor, L.P. v. Americhip Intern., Inc.*, No. 11CV339 JLS BGS, 2011 WL 3299099, at *2 (S.D. Cal. Aug. 1, 2011). Moreover, Cerwick declares that he "did not attend any of the meetings at VP in which . . . ETBE was proposed as an alternate component" and "did not make the decision by VP to utilize ETBE in any of VP's racing fuels." (Cerwick Decl. ¶ 6). Cerwick similarly asserts that he did not provide "specific direction and instruction regarding how to market or label VP's fuels containing ETBE." (*Id.*)

Plaintiffs also allege that "Defendants actively concealed and refused to disclose the use of the ETBE and lack of testing to Dion and others," and that "Defendants took steps to prevent others at VP from disclosing to Dion and others the use of ETBE and lack of testing, including by bribing some employees and threatening others with litigation." (*Id.* ¶ 30). However, Plaintiffs allege that "Defendants" took such steps without clarifying whether Cerwick personally participated in any of these actions.

Plaintiffs further allege that in a meeting that occurred in January 2019, Defendants represented to Dion's representatives that "VP would 'clean up' its act by eliminating all fraudulent, unlawful, and unfair practices." (Compl. ¶ 45). However, Cerwick did not attend the meeting and Plaintiffs have not provided any evidence of Cerwick's control over these employees at the meeting. (*See* Compl. ¶¶ 43, 45, Mot. at 3).

At the hearing, Plaintiffs argued that the declarations attached in their Opposition provides additional support for finding personal jurisdiction. However,

**Case No.** CV 19-5154-MWF (SSx)  **Date:** September 27, 2019

**Title:**  M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

with regard to Cerwick, the declaration merely asserts that he is a "hands on micromanager[]" and that "all matters of any significance were discussed and reported" to Cerwick.  (Busby Decl. ¶ 8; *see also* 12(b)(2) Opp. at 11).

Based on this record, the Court determines that Plaintiffs failed to demonstrate that Cerwick was the "central figure" in the disputed activities.  Accordingly, the guiding spirit exception does not apply to Cerwick.

### b. *Gray*

Susan B. Gray is the General Counsel of VP and was previously its Chief Financial Officer and Chief Operating Officer.  (12(b)(2) Mot. at 3; Declaration of Suan G. Gray ¶ 2 (Docket No. 24); Compl. ¶ 22).  Her job duties included or includes "general oversight of daily company operations," "ensuring VP met its various financial obligations," and "provide legal advice to various VP management and others related to the design, formulation, labeling, marketing, manufacturing, and/or distribution of VP's various products."  (*Id.* ¶ 5).

Plaintiffs allege that Gray was "in charge of and had control over" how VP racing fuels were formulated, marketed, and labeled.  (Compl. ¶ 23).  In response, Gray asserts that she was "not the decision maker in those areas" and does "not have any specialized training, education or technical experience" in the field.  Nonetheless, she admits that she attended many meetings where the decision to use ETBE instead of MTBE was discussed.  (*See* Compl. ¶ 23; Gray Decl. ¶¶ 6-8).

More critically, Plaintiffs allege that Gray instructed employees to conceal the fact that VP's racing fuel was below the octane rating that VP represented it to be.  (*See* 12(b)(2) Opp. at 10).  For example, Busby declares that Gray directed "VP employees [] to not worry about [the fact that VP's racing fuel is below the octane rating]" and to "just keep selling" them.  (Busby Decl. ¶ 10).  Gray also attended meetings with Plaintiffs in January 2019, where VP employees allegedly stated that VP would "clean up" its act by eliminating fraudulent practices and comply with their specifications, including octane ratings.  (*See* Compl. ¶ 45, Gray Decl. ¶ 10).

**Case No.** CV 19-5154-MWF (SSx)  **Date:** September 27, 2019

**Title:**     M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

Plaintiffs sufficiently demonstrated that Gray directly participated and had control over at least some of the challenged activities. Accordingly, the guiding spirit exception applies to Gray.

### c. *Hendel*

Bruce Hendel is the Vice President North American Sales – Race Fuel and Consumer Products and was previously a Director of Sales – Consumer Products and a Regional Manager – West Coast. (12(b)(2) Mot. at 4; Declaration of Bruce Hendel (Docket No. 25) ¶ 2). As the Vice President of North American Sales, his job duties "generally involve sales and management of VP sales personnel." (Hendel Decl. ¶ 6).

Plaintiffs allege that Hendel was "in charge of and had control over" how VP racing fuels were formulated, marketed, and labeled. (Compl. ¶ 23). As with Cerwick, however, Plaintiffs mainly argue that Hendel must have been in charge because he is a "hands-on micromanager." (12(b)(2) Opp.) Otherwise, Plaintiffs provide no factual support for Hendel's role in these decisions. Based on this record, Plaintiffs have failed to demonstrate that Hendel was in charge of such decisions.

However, Plaintiffs also allege that Hendel was involved in lying about the fuels VP sold to Plaintiffs and covering up those lies. (Opp. at 16). Hendel attended the January 2019 meeting, and in that meeting, Plaintiffs allege that he and other VP employees promised to clean up their act and comply with their specifications, including octane ratings. (Compl. ¶ 45).

Plaintiffs have sufficiently demonstrated that Hendel is one of the primary participants in at least some of the challenged activities. Accordingly, the guiding spirit exception applies to Hendel.

### 2. Alter-ego Exception

When a corporation is merely the alter-ego of an individual defendant, courts may "pierce the corporate veil" and exercise jurisdiction and attribute the corporation's contacts to the individual. *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.

| Case No. | CV 19-5154-MWF (SSx) | Date: September 27, 2019 |
|---|---|---|
| Title: | M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al. | |

Supp. 711, 715 (C.D. Cal. 1996). To make such a showing, a plaintiff must allege (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist; and (2) that failure to disregard their separate identities would result in fraud or injustice. *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). A complaint must contain plausible, factual allegations of these two elements, and not merely conclusory repetition of the elements. *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 993 (E.D. Cal. 2012) (finding that conclusory allegations of alter-ego status are not sufficient because "[t]his stringent pleading requirement reflects the principle that "[d]isregarding the corporate entity is recognized as an extreme remedy, and '[c]ourts will pierce the corporate veil only in exceptional circumstances' ... Indeed, it is axiomatic that [t]here is a general presumption in favor of respecting the corporate entity.").

The Individual Defendants argue, and the Court agrees, that Plaintiffs did not submit any argument or evidence to suggest the 'alter ego' exception applies. (12(b)(2) Reply at 1). Accordingly, this exception does not apply to any of the three Individual Defendants.

In summary, Individual Defendants' Motion to Dismiss is granted in part and denied in part. The Court grants Defendants' Motion to Dismiss Cerwick because fiduciary shield doctrine applies and none of the exceptions to the doctrine applies. However, the guiding spirit exception applies to Gray and Hendel because Plaintiffs have sufficiently alleged that they were central figures in the challenged activities. The Court also determines that the exercise of personal jurisdiction over Gray and Hendel is reasonable. Accordingly, the Court denies the Motion for Gray and Hendel.

## IV.   <u>12(b)(6) AND 9(b) MOTION TO DISMISS</u>

Defendant VP also brings a motion to dismiss pursuant to Rule 12(b)(6) and 9(b). As an initial matter, Plaintiffs argue that this motion should be denied in its entirety because Defendant VP "utterly failed to comply with any of the requirements of the L.R. 7-3." (Rule 12(b)(6) Opp. at 4). Plaintiffs explain that VP first notified Plaintiffs about its motion "two days before VP filed its motion" and sought to schedule a telephonic meet-and-confer on July 1, which was "after VP said its motion

Case No.  **CV 19-5154-MWF (SSx)**                    Date:  **September 27, 2019**

Title:         M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

was due." (*Id.* at 4-5).  Defendant VP admits that it failed to timely meet and confer with Plaintiffs, but it explains that its failure was driven by Plaintiffs' refusal to extend VP's pleading deadline.  (Rule 12(b)(6) Reply at 1).  VP also notes that Plaintiffs sent a four-page meet and confer letter on June 20 with regard to a separate motion, in which Plaintiffs addressed a number of issues raised in this current Motion.  (*Id.* at 3).

Although it appears that the parties failed to meet and confer in strict compliance with Local Rule 7-3, it does not appear that Plaintiff has suffered prejudice as a result of this failure.  The Court, therefore, will proceed to the merits of the Rule 12(b)(6) Motion.  *See, e.g.*, *Reed v. Sandstone Props., L.P.*, No. 12-CV-5021-MMM (VBKx), 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013) ("Because Reed suffered no real prejudice as  result of the late conference, however, the court elects to consider the motion on the merits.")  Counsel are warned to scrupulously comply with all Local Rules in the future.

### A.    Rule 12(b)(6)

### 1.  Legal Standard

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). The Court must disregard allegations that are legal conclusions, even when disguised as facts. *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between

| Case No. | CV 19-5154-MWF (SSx) | Date: September 27, 2019 |
|---|---|---|
| Title: | M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al. | |

possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the Complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, No. 13-56644, 2016 WL 5389307, at *2 (9th Cir. Sept. 27, 2016) (as amended) (quoting *Iqbal*, 556 U.S. at 679). Where the facts as pleaded in the Complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

## 2. Discussion

Defendant argues that Plaintiffs' UCL and FAL claims are preempted by the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* (the "PMPA"). (12(b)(6) Mot. at 3-8). Defendant further argues that Plaintiffs' UCL claim is barred because it improperly seeks non-restitutionary disgorgement. (*Id.* at 9- 10). The Court addresses each argument below.

### a. *PMPA Preemption (UCL and FAL Claim)*

The Constitution's Supremacy Clause provides that federal law is the "supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. State law is preempted "to the extent of any conflict with a federal statute," regardless of whether the conflict is express or implied. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Courts must "find preemption where it is impossible for a private party to comply with both

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5154-MWF (SSx)                    Date:  September 27, 2019
Title:        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

state and federal law …, and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372-73 (internal quotation marks, citations, and alterations omitted).

With regard to the PMPA, the following relevant overview of the statute was discussed in *Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011):

> The PMPA mandates that gasoline retailers "display in a clear and conspicuous manner, at the point of sale to ultimate purchasers of automotive fuel, the automotive fuel rating of such automotive fuel ..." 15 U.S.C. § 2822(c). The PMPA instructs the FTC to promulgate rules prescribing "a uniform method of displaying the automotive fuel rating of automotive fuel at the point of sale to ultimate purchasers." 15 U.S.C. § 2823(c)(1)(B).

> In response, the FTC promulgated the Posting Rule that applies to "... refiner[s], importer[s], producer[s], distributor[s], [and] retailer[s] of automotive fuel[,]" 16 C.F.R. § 306.2, and contains detailed instructions for the "posting of automotive fuel ratings in or affecting commerce ..." 16 C.F.R. § 306.1. The Posting Rule comprehensively regulates all labeling, disclosure, and rating requirements to be displayed at the point of sale to retail gasoline customers. *See* 16 C.F.R. § 306.10. The Posting Rule includes sample octane labels, and delineates their specific layout, type size and setting, colors, and content. *See* 16 C.F.R. § 306.12. The Posting Rule expressly limits label content: "No marks or information other than that called for by this rule may appear on the labels." 16 C.F.R. § 306.12(d).

> The PMPA contains a broad preemption against state and local laws and regulations addressing any acts or omissions covered by the PMPA, "unless such provision of such law or regulation is *the same* as the applicable provision of this subchapter." 15 U.S.C. § 2824(a) (emphasis

**Case No.** CV 19-5154-MWF (SSx)                    **Date:** September 27, 2019
**Title:**       M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

added). The Posting Rule incorporates this preemption provision. *See* 16
C.F.R. § 306.4(a).

*Id.* at 934.  Thus, to determine whether Plaintiffs' UCL and FAL claims are preempted,
the Court must examine whether Plaintiffs' state claims are "the same" as the
applicable provision of the PMPA.

Plaintiffs claim that VP must specify on its label whether the cannister contains
MTBE or ETBE.  Defendants argue that this is preempted because such disclosure is
not required under the PMPA.  (12(b)(6) Mot. at 5).  In response, Plaintiffs argue that
this disclosure is not incongruent with the PMPA because the PMPA would not be
"interfered with by such truthful conduct."  (*Id.*).

Plaintiffs' argument is unpersuasive.  The PMPA also expressly preempts state
regulations that are not "the same" as the PMPA.  It further states that "[n]o marks or
information other than that called for by this rule may appear on the labels."  16 C.F.R.
§ 306.12(d).  To hold that the California laws may require additional disclosures not
mandated by the PMPA would violate the express language of the preemption
provision.  *See Alvarez*, 656 F.3d at 935 (affirming district court's determination that
"additional corrective disclosure sought by Plaintiffs was not 'the same as' the specific
labeling requirements prescribed by the PMPA and the Posting Rule.").  Thus, to the
extent that Plaintiffs' UCL and FAL claims are based on the fact VP does not specify
whether the cannister contains MTBE or ETBE on its label, both claims are preempted.

However, in their Complaint, Plaintiffs additionally allege that VP's labeling
violates the UCL and FAL because VP's fuels had lower octane rating than what was
represented on its label. (Compl. ¶¶ 42-48).  For example, Plaintiffs allege that VP's
octane rating was actually 107.1 and 107.5 when it was represented to be 110 on its
label.  (*Id.* ¶¶ 42, 48).  Plaintiffs' UCL and FAL claims are not preempted to the extent
that they are based on Defendant's misrepresentation of the actual octane rating.  *See
VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1083 (E.D. Cal.
2009) (holding that UCL and FAL claims are not preempted when "Plaintiff is not
requesting that Defendant disclose more information than required, only that
Defendant's disclosure be accurate and truthful.").

Case No. **CV 19-5154-MWF (SSx)**                    Date: **September 27, 2019**
Title:        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

Because Plaintiffs have alleged at least one viable theory of liability, their UCL and FAL claims are not preempted by the PMPA. However, Plaintiffs must limit the bases for their UCL and FAL claims to only what is required under the PMPA.

### b. *Economic Injury (UCL Claim)*

Defendant VP argues that Plaintiffs' UCL claim is barred because they failed to plead that they "suffered actual monetary harm" and seeks non-restitutionary disgorgement. (12(b)(6) Mot. at 9-10). The parties primarily dispute whether the wording of Plaintiffs' Complaint covers only restitutionary damages or also includes non-restitutionary damages. But before diving into the proper scope of damages Plaintiffs may seek, Plaintiffs must first establish that it has standing to bring a UCL claim.

To establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322, 246 P.3d 877 (2011) (emphasis in original). "A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'" *Junod v. Mortg. Elec. Registration Sys.*, 584 F. App'x 465, 469 (9th Cir. 2014) (quoting *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 156 Cal. Rptr. 3d 912 (2013)).

It is undisputed that Plaintiffs resold VP's fuels to their own consumers. (Compl. ¶¶ 16, 17, 42). VP speculates that Plaintiffs must have sold the fuel products at a price higher than the amount they paid to VP. (*Id.* at 10). In such a case, VP argues that Plaintiff is not entitled to any restitution. Plaintiffs respond by pointing out that their Complaint does not allege that they "sold all of the fuel [they] purchased from VP, always at a cost or at a profit." (12(b)(6) Opp. at 11). Plaintiffs assert that *if* they had sold any of the fuel below cost, they would be entitled to restitution. (*Id.*).

Plaintiffs have failed to allege sufficient facts to establish whether they suffered economic injury. Plaintiffs do not allege that they sold VP's fuel below cost in their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-5154-MWF (SSx)                    Date:  September 27, 2019
Title:        M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

Complaint or that they paid more than they would have if they had known about the lower octane rating.  Instead, they argue in their Opposition that they *might* have sold below cost, in which case they would have suffered an economic injury.  (12(b)(6) Opp. at 11).  Such an assertion is insufficient to establish actual monetary harm.

Accordingly, Defendant's motion to dismiss UCL and FAL claims for preemption is denied, but Defendant's motion to dismiss UCL claim for lack of standing is granted with leave to amend.

## B.    Rule 9(b)

Defendant VP also argues that Plaintiffs fail to satisfy Federal Rules of Civil Procedure 9(b).  (Rule 12(b)(6) Mot. at 10).

Fraud-based claims are governed by Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) standard applies to California consumer protection claims, including under the UCL).  "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted).  Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106.  Such averments must be specific enough to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Id*. (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Defendant argues that Plaintiffs' allegations are "spare and conclusionary" and points to several deficiencies.  (12(b)(6) Mot. at 11).  First, Defendant asserts that Plaintiffs fail to allege "how the individuals exercised control over" "how the products

Case No. **CV 19-5154-MWF (SSx)**                    Date:  **September 27, 2019**
Title:          M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al.

were formulated, designed, manufactured, labeled advertised, marketed, stored, transported and sold to Dion and others." (12(b)(6) Mot. at 11).  Second, Defendant claims that Plaintiffs fail to state the factual basis for Plaintiffs' allegation that VP directed false fuel octane ratings.  (*Id.* at 11-12).

The Court notes that some of Plaintiffs' allegations appear to be conclusory.  For example, Plaintiffs appear to argue that Cerwick must have exercised control over certain decisions because he is the owner/President and because VP employees must have taken certain actions "at the instruction and direction of Cerwick, Gray, and/or Hendel." (12(b)(6) Opp. at 14-15).  Plaintiffs also allege that VP employees bought and secretly started using ETBE "at the instruction and direction of Cerwick, Gray, and/or Hendel" without any factual support for Cerwick, Gray, or Hendel's involvement.  (*See e.g.,* Compl. ¶ 27).

However, Plaintiffs have made other allegations that are sufficiently specific. For example, Plaintiffs allege that Gray and Hendel "represented and warranted to Dion's representatives . . . that, among other things, VP would 'clean up' its act by eliminating all fraudulent, unlawful, and unfair practices, and that all of VP's future deliveries to Dion of VP racing fuels, including F&L branded VP racing fuel, would fully comply with their respective specifications, including but not limited to octane ratings." (Compl. ¶ 45).  Plaintiffs also allege that VP designed a VP-only-internal labeling system to minimize the chance of getting caught with lower than represented octane rating. (Compl. ¶ 35).  These allegations are specific enough to give Defendants notice of the misconduct charged.

Accordingly, the Court denies Defendant's motion to dismiss fraud-based claims pursuant to Rule 9(b).

## V.    **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion to Remand is **DENIED** and its request for attorneys' fees is **DENIED.**

| | |
|---|---|
| **Case No.** **CV 19-5154-MWF (SSx)** | **Date:** **September 27, 2019** |
| Title: M.O. Dion and Sons, Inc. et al. v. VP Racing Fuels, Inc. et al. | |

Individual Defendants' Motion to Dismiss Cerwick, Gray, and Hendel is **GRANTED** *in part* and **DENIED** *in part without leave to amend.* Defendant Cerwick is dismissed for lack of personal jurisdiction. However, the Court has personal jurisdiction over Defendants Gray and Hendel.

Defendant VP's Motion to Dismiss pursuant to Rules 12(b)(6) and 9(b) is **GRANTED** *in part* and **DENIED** *in part with leave to amend.* Defendant's motion to dismiss UCL and FAL claims for preemption is denied, but Defendant's motion to dismiss UCL claim for lack of standing is granted. Plaintiff may file a First Amended Complaint, if any, by **October 11, 2019.** Defendants shall respond to the operative Complaint on or before **October 25, 2019**.

IT IS SO ORDERED.